IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| NICOLAS MARQUEZ, #1451935 | § | |
| VS. | § | CIVIL ACTION NO. 9:09cv71 |
| NATHANIEL QUARTERMAN, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF PARTIAL DISMISSAL

Plaintiff Nicolas Marquez, a prisoner confined at the Polunsky Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on April 24, 2009. The Plaintiff complained about the prison system's refusal to provide him with dentures. On August 4, 2009, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Ginger Lively, Nurse

Kathy Gray, Warden Eddie Baker and Warden Tim Lester testified under oath about prison policies and information contained in the Plaintiff's prison records.

The Plaintiff testified that he arrived at the prison system in August, 2007. He did not have any teeth at the time of his arrival. He requests for dentures were denied. He was told that dental policy dictates that dentures will be denied to inmates who have a Body Mass Index ("BMI") from 18.5 to 25, which is considered normal. His BMI ranged from 20-23, thus he was ineligible for dentures under the policy. He noted that he weighed 135 pounds when he arrived at the prison system. He now weighs only 122 pounds. The Plaintiff testified that he has been prescribed a soft food pass, but soft food has not been provided. He added that a blended diet was not provided.

Nurse Gray testified under oath from the Plaintiff's medical records. She testified that the medical records reveal that he has been prescribed soft food diets. She confirmed that his request for dentures has been denied due to his BMI, although Dr. Brown submitted a recommendation to the full dental committee for approval of complete dentures. The recommendation was dated April 2, 2009. Nurse Gray testified that the records do not contain any follow-up entries in response to the recommendation, although she noted that he did not qualify for dentures under the current policy.

The Plaintiff testified that he sued TDCJ-CID Director Quarterman because he is the Director and responsible for the prison system. He sued Warden Simmons because he is responsible for the Polunsky Unit. The Plaintiff sued Dr. Woody, a dentist at the Polunsky Unit, who refused to provide him adequate dental care pursuant to policy. He sued Dental Hygienist Mimms and R.D.A. Holliday because they likewise denied him adequate dental care and misled

2

him into believing that he would receive dentures. The Plaintiff testified that he sued Nurse Williamson because she failed to resolve the problem. He sued Polunsky Unit Practice Manager K. Wallace because he denied the Plaintiff dentures even though he has no teeth and cannot properly digest his food. The Plaintiff sued Region I Administrator Guy Smith for denying his Step 2 grievance concerning dentures. Finally, he sued Food Services Officer Lemaster for refusing to provide him a soft food diet as medically prescribed and denying him any soft food.

      The Plaintiff gave the Court permission to review his medical and grievance records. On May 21, 2008, Dr. Johnny Mason, a dentist, examined the Plaintiff in response to a complaint of sore gums. Dr. Mason specified that there was no sign of gingival irritation and no pain was reported on that day. The Plaintiff asked for a soft diet pass, and Dr. Mason noted that the Medical Department issued diet passes. The Plaintiff's BMI was 22 at that time. On January 5, 2009, Dr. Johnny Mason told the Plaintiff that there had not been any change in the UTMB/CMC policy that requires a medical necessity for construction of dentures. On January 25, 2009, Dr. Mason told him that the prison system was making dental prosthesis available only on a medical necessity basis, and he did not have a medical necessity at that time. On March 6, 2009, the Plaintiff saw Dental Hygienist Mimms concerning a request for dentures, and she referred him to the dentists for screening. On April 2, 2009, the Plaintiff was seen by Dr. Ila Brown. She noted the Plaintiff's complaints about an inability to chew food, stomach cramps and gas. She noted his history of intestinal gas, spastic colon and GERD. She observed that he was edentulous or toothless. She told him that she would submit a recommendation to the full dental committee for approval of complete dentures.

The Plaintiff's grievance records show that he filed two grievances concerning the denial of dentures and the failure to provide him a soft food diet. The Step 2 response in Grievance Number 2008194765 reveals that he denied dentures because his BMI was 22, in accordance with CMC Dental Services Policy E-36.4. The response was signed by Guy Smith on October 20, 2008. In his Step 2 grievance in Grievance Number 2009050395, the Plaintiff noted that he was told that he would receive a soft food diet, but he asserted that the officer running the food service line told him that no soft food diet exists. The response noted that Dr. Zond placed him on a blended diet for ten months on May 28, 2008. The diet was renewed by Dr. Porras for 180 days on November 20, 2008. The food service manager specified that he was receiving the prescribed diet. The response was signed by K. Ward on March 9, 2009.

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), the Supreme Court held that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

The Fifth Circuit has issued several cases in recent years that concern prison systems failing to provide inmates with dentures. One such case was *Hyatt v. Sewell*, 197 Fed. Appx. 370 (5th Cir. 2006), which originated in this Court. The Fifth Circuit made the following conclusion:

> Hyatt began a treatment plan in December 2002, which included a recommendation for a lower partial denture. Over the course of the next three years, Hyatt received a

> number of fillings as well as other treatment. Although there were some delays in his treatment regarding his dentures, the summary judgment evidence shows that Hyatt was seen regularly, that treatment was provided, and that any delays were the result of at most negligence rather than any deliberate indifference to Hyatt's serious medical needs.

The Fifth Circuit affirmed this Court's decision granting the defendants' motion for summary judgment.

The next case decided by the Fifth Circuit was *Williams v. Mason*, 210 Fed. Appx. 389 (5th Cir. 2006), which also originated in the Eastern District of Texas. The case had been dismissed as frivolous pursuant to 28 U.S.C. § 1915A(b)(1). The plaintiff alleged that he suffered bleeding gums and digestive difficulty, including diarrhea and cramps, due to the failure of the defendant, a dentist, to provide him with dentures. He alleged in his grievances that he suffered from cuts and bleeding taking days to heal and that certain foods were difficult to chew. The Fifth Circuit specified that taking the plaintiff's claims as true, as required for purposes of initial screening, it did not appear "that no relief could be granted based on his alleged facts." *Id.* at 390. The Fifth Circuit concluded that if the plaintiff suffered the injuries and conditions he alleged, then he may have a serious medical need for dentures. *Id.* The case was remanded, and the plaintiff was provided dentures on remand.

The next case was *Vasquez v. Dretke*, 226 Fed. Appx. 338 (5th Cir. 2007), which also originated out of the Eastern District of Texas. The case was before the Fifth Circuit after the district court had dismissed the case as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1). The Fifth Circuit made the following statement:

> Vasquez has alleged that because he has no dentures, he suffers from difficulty eating, headaches, disfigurement, severe pain, bleeding in his mouth, and blood in his stool. In addition, a doctor recommended dentures for Vasquez. These allegations are sufficient to state a claim for a serious medical need.

*Id.* at 340. The Fifth Circuit rejected the argument that the plaintiff did not have a serious medical need because he did not lose weight. The case was remanded for further consideration.

In *Scribner v. Linthicum*, 232 Fed. Appx. 395 (5th Cir. 2007), the Fifth Circuit reversed this Court's decision granting summary judgment in favor of the TDCJ Director of Medical Services. The Fifth Circuit noted that there was summary judgment evidence that the defendant was aware of the plaintiff's complaints about not receiving dentures and that she had given final approval to the policy that resulted in the denial of dentures. A similar result occurred in *Huffman v. Linthicum*, 265 Fed. Appx. 162 (5th Cir. 2008).

The Plaintiff's allegations of complaints about an inability to chew food, stomach cramps, gas, spastic colon and GERD, which resulted in a loss of weight of 13 pounds since his arrival at the prison system, are consistent with the type of problems listed in the recent cases that led the Fifth Circuit to conclude that inmates had a serious medical need. He should be permitted to proceed with his claims.

The next issue for consideration concerns the appropriate people who should remain in the lawsuit as defendants. The Court is of the opinion that the dental personnel who participated in the denial of dentures should remain in the lawsuit, including Dr. Woody, R.D.A. Holliday, Nurse Williamson, and Polunsky Unit Practice Manager K. Wallace. The Plaintiff should also be permitted to proceed with his deliberate indifference claims against Food Services Officer Lemaster, who purportedly denied him a soft food diet despite the prescription for it.

The Plaintiff's claims against Dental Hygienist Mimms should be dismissed because the record reveals that she was not involved in the denial of dentures; instead, she referred him to the dentists for screening to see if he should receive dentures. In other words, she was receptive to his request and forwarded his name for consideration, as opposed to being deliberately indifferent by automatically denying his request for dentures. The claims against Mimms fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The claims against her should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff sued Director Quarterman and Warden Simmons because they hold supervisory positions. They did not have any personal involvement in the Plaintiff's case. In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates a defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Neither individual participated in the alleged acts of misconduct. They were sued because of their supervisory roles, but the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied. The claims against them fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. Such claims should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The remaining defendant is Region I Administrator Guy Smith, who denied the Plaintiff's Step 2 grievance. Congress requires inmates to exhaust their "administrative remedies as are available . . ." 42 U.S.C. § 1997e(a). A prison system is not required to establish grievance procedures, and inmates do not have a basis for a lawsuit because a prison system has not established grievance procedures or fails to adhere to it. 42 U.S.C. § 1997e(b). The Fifth Circuit has made it clear that inmates do not have a basis for a meritorious civil rights lawsuit just because they are unhappy with grievance procedures:

> Geiger does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

*Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Congress established the exhaustion requirement to give prisons and jails the first opportunity to address complaints by inmates, but inmates do not have a basis for a lawsuit because they are dissatisfied with the grievance procedures. The Plaintiff does not have a basis for a civil rights lawsuit against Guy Smith just because he denied the Plaintiff's Step 2 grievance. The claims against Guy Smith fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The claims against him should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is therefore

**ORDERED** that the Plaintiff may proceed with his deliberate indifference claims against Dr. Woody, R.D.A. Holliday, Nurse Williamson, Polunsky Unit Practice Manager K. Wallace and Food Services Officer Lemaster. It is further

**ORDERED** that the Plaintiff's claims against Dental Hygienist Mimms, Director Nathaniel Quarterman, Warden Timothy Simmons, and Region I Administrator Guy Smith are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

So **ORDERED** and **SIGNED** this **12** day of **August, 2009.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE