IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| NICOLAS MARQUEZ, #1451935 | § | |
| VS. | § | CIVIL ACTION NO. 9:09cv71 |
| NATHANIEL QUARTERMAN, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Nicolas Marquez, a prisoner confined at the Polunsky Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c). The present memorandum opinion concerns Defendant Woody's motion for summary judgment (docket entry #53), the Plaintiff's response (docket entry #55), and the motion for summary judgment filed by Defendants Holiday, Williams, Wallace and Lemaster (hereinafter "TDCJ Defendants"[1]) (docket entry #58). The Plaintiff did not timely file a response to the latter motion for summary judgment.

Plaintiff's Factual Allegations

The original complaint was filed on April 24, 2009. The Plaintiff complained about the prison system's refusal to provide him with dentures. On August 4, 2009, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to

---

[1] It is noted that the TDCJ Defendants have indicated that Dr. Woody was never a employee of the State; instead, UTMB entered into a contract with her to provide dental services.

1

consider the Plaintiff's claims. The Plaintiff testified that he arrived at the prison system in August, 2007. He did not have any teeth at the time of his arrival. His requests for dentures were denied. He was told that dental policy dictates that dentures will be denied to inmates who have a Body Mass Index ("BMI") from 18.5 to 25, which is considered normal. His BMI ranged from 20-23, thus he was ineligible for dentures under the policy. He noted that he weighed 135 pounds when he arrived at the prison system. He now weighs only 122 pounds. The Plaintiff testified that he has been prescribed a soft food pass, but soft food has not been provided. He added that a blended diet was not provided. Nurse Kathy Gray testified under oath from the Plaintiff's medical records. She confirmed that his request for dentures has been denied due to his BMI, although Dr. Brown submitted a recommendation to the full dental committee for approval of complete dentures.

The Plaintiff seeks $10,000 per defendant in compensatory and punitive damages and an injunction providing him dentures and "proper food." At the close of the *Spears* hearing, the Plaintiff was permitted to proceed with his deliberate indifference claim against Dr. Tanya Woody, R.D.A. Holliday, Nurse Williams, Polunsky Unit Practice Manager K. Wallace and Food Services Officer Lemaster.

<u>Defendant Tanya Woody's Motion for Summary Judgment</u>

Defendant Dr. Woody filed a motion for summary judgment (docket entry #53) on January 4, 2010. She responded to the Plaintiff's claim that she refused to provide him adequate dental care pursuant to policy. In support of her motion, she attached her own affidavit, along with various prison records.

Dr. Woody indicated that she worked on a part-time basis at the Polunsky Unit starting on February 10, 2009. She stopped working there during July, 2009. She asserted that she never met

2

the Plaintiff and never had a dentist-patient relationship with him. She asserted that she has never seen, examined or treated him for any dental or health care related complaint or problem. Prior to this lawsuit, she was not aware of any need, desire, request or complaint by the Plaintiff for dentures. She never refused nor had any opportunity to refuse him dental care.

Dr. Woody attached dental records from the relevant period of time showing that she never saw, examined or treated him. The dental records attached to the motion reveal that Dr. Johnny Mason, D.D.S., saw the Plaintiff on January 5, 2009, and that the Plaintiff was told he did not qualify for dentures due to a lack of a medical necessity. R.D.H. Vivian L. Mimms saw him on March 6, 2009. She noted that the Plaintiff said that he thought the dentist was going to try to get him dentures and that there was nothing in the record to indicate that. D.D.S. Ila H. Brown saw the Plaintiff on April 2, 2009. She noted that he was edentulous, and she indicated that she would send a recommendation to the committee for approval of complete dentures. It is noted that the TDCJ Defendants submitted a more complete copy of the Plaintiff's medical and dental records with their motion for summary judgment, which likewise shows that Dr. Woody never had a dentist-patient relationship with him at any time.

Dr. Woody argued that the Plaintiff has not shown that she was deliberately indifferent to his serious dental needs. She further argued that she was not deliberately indifferent to his serious dental needs. She added that she was never subjectively aware of any facts from which a substantial risk of serious harm could be inferred, particularly since she never met him. She argued that she is entitled to summary judgment. The details of her legal arguments will be discussed more fully in the Discussion and Analysis section of this Memorandum Opinion.

## Plaintiff's Response

The Plaintiff filed a brief in opposition to Dr. Woody's motion for summary judgment (docket entry #55) on January 26, 2010. He denied Dr. Woody's claim that she never saw him nor had a dentist-patient relationship with him. In support of the response, he attached his own affidavit. He noted that he submitted a sick call request to see a dentist on March 13, 2009. He received a response from R.D.H. Mimms on March 16, 2009. He attached the response. She indicated that he was scheduled to see a dentist during that week. He noted that Dr. Woody's affidavit reveals that she was working there during this time period. He speculated that Dr. Woody did not electronically sign an entry because she was only employed as a part-time dentist under contract and was not able to sign an entry under her own name. He stressed, however, that he saw her. He argued that there is a disputed issue of material fact as to whether she saw him and denied him dentures at that time. He added that "she told him that as a matter of UTMB-CMC policy, that even though he had no teeth, had gastric problems, inability to properly digest his food, bleeding gums which caused him pain, that because he did not meet UTMB-CMC and TDCJ's policy, simple weight loss and all these elements stated above were insufficient for him to be provided dentures." The Plaintiff argued that Dr. Woody is not entitled to summary judgment. Once again, the details of his legal arguments will be discussed more fully in the Discussion and Analysis section of this Memorandum Opinion.

## TDCJ Defendants' Motion for Summary Judgment

The TDCJ Defendants filed a motion for summary judgment (docket entry #58) on February 2, 2010. In support of their motion, they attached a copy of an affidavit of Billy Horton, D.D.S., regarding UTMB-CMC policy; affidavit of Nurse Kelly Maxwell; affidavit of Jacque Andrepont;

4

affidavit of Warden Billy Hirsch; relevant grievance records; and relevant certified and authenticated medical and dental records.

The Defendants raised the following legal issues:

1. Whether Defendants are entitled to Eleventh Amendment immunity for monetary claims against them in their official capacities.

2. Whether Plaintiff's claims satisfy the redressability element of the Article III standing requirement.

3. Whether Plaintiff properly exhausted his administrative remedies with respect to his claim against Defendant Lemaster.

4. Whether Defendants are entitled to judgment as a matter of law on Plaintiff's deliberate indifference claims.

5. Whether Plaintiff can overcome Defendants' entitlement to qualified immunity for claims against them in their individual capacities.

They argued that they are entitled to summary judgment with respect to these issues.

The TDCJ Defendants provided a thorough review of the records regarding the Plaintiff's claims. It was noted that the Plaintiff was first evaluated by a dentist for a dental prosthesis, or dentures, on January 25, 2008. He was made aware of the existing dental policy and informed as to why he did not qualify. The records attached to the motion for summary judgment reveal that Dr. Johnny Mason saw the Plaintiff. He noted that the Plaintiff was edentulous and that his BMI was 23. Dr. Mason observed that there were no metabolic abnormalities noted in the history. His assessment was that the prison system was making dental prosthesis only on a medical necessity basis. There was no indication of a medical necessity at that time. The Plaintiff was informed as to the policy and indicated an understanding of it.

Dr. Mason saw the Plaintiff again on May 21, 2008. The Medical Department referred him for evaluation of sore gums. Dr. Mason again noted that the Plaintiff was edentulous. He did not observe any gingival irritation and no pain was reported on that day. The Plaintiff told him that he wanted a soft diet pass. Dr. Mason told him that diet passes were issued by the Medical Department. He was advised to submit a sick call request to the Medical Department if he wanted a soft diet pass.

Dr. Mason saw the Plaintiff a third time on January 5, 2009. The Plaintiff again stated that he wanted dentures. Dr. Mason noted that there were no changes in the Plaintiff's medical history. He informed the Plaintiff that there had not been any changes to the policy that requires a medical necessity for construction of dentures. The Plaintiff indicated that he understood.

On March 6, 2009, R.D.H. Mimms reviewed the Plaintiff's sick call request for dentures. The Plaintiff indicated that he had not received an answer about his request for dentures. Mimms noted that the Plaintiff reported that he thought the dentist was going to try to get him dentures, but she observed that there was nothing in the chart to indicate that. She issued an instruction to refer him to a dentist for an examination and evaluation.

On March 20, 2009, Dr. Ila Brown noted that the Plaintiff did not show up for a exam. He was rescheduled. She saw him on April 2, 2009. She noted that the Plaintiff wanted upper and lower complete dentures. He complained of an inability to chew food, stomach cramps and gas. Her assessment was evaluation for dentures was needed by the prosthodontic committee. Her plan was to send a recommendation to the committee for approval of complete dentures. The TDCJ Defendants noted that the lawsuit was filed on April 2, 2009, the same day he saw Dr. Brown. They noted that they are assuming that the Plaintiff still has not been approved for dentures.

With respect to a soft diet, the TDCJ Defendants noted that the Plaintiff asked for and received a prescription for a 180 day "diet for health" on October 16, 2007. On May 28, 2008, his diet was modified, at his request, to a 10 month soft diet. It is again noted that Dr. Mason advised him to request a soft diet on May 21, 2008. The soft diet was renewed for another 180 days on March 6, 2009. Dr. Porras issued an order for a soft, bland diet for 365 days on March 31, 2009. The TDCJ Defendants noted that the Plaintiff was issued an "Offender Medical Pass" on every occasion that a soft diet was ordered to ensure receipt of the correct diet. They also submitted an affidavit from Warden Hirsch that noted that unit records show that the Plaintiff was placed on the soft diet roster on November 20, 2008, in accordance with medical orders, and that it is the practice of TDCJ to comply with all medical orders.

With respect to weight, the TDCJ Defendants noted that the Plaintiff weighed 112 pounds upon his arrival to the prison system on August 31, 2007. He was completely edentulous, or toothless, upon entering the prison system. One year later, on August 20, 2008, he weighed 126 pounds. On August 7, 2009, he weighed 131 pounds.

The Court will address the legal issues raised by the TDCJ Defendants in the Discussion and Analysis section of this Memorandum Opinion.

Plaintiff's Response

On December 8, 2009, the Plaintiff was given a deadline of February 19, 2010, to file a response to the TDCJ Defendants' motion for summary judgment. On February 24, 2010, the deadline was extended to March 10, 2010. As of today, the Plaintiff has not filed a response.

Discussion and Analysis

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48. In making this threshold inquiry, the Court must consider that "[s]ummary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Smith v. Xerox Corp.,* 866 F.2d 135, 137 (5th Cir. 1989) (citations omitted); Fed. R. Civ. P. 56(c).

Once the movants make a showing that there is no genuine material fact issue to support the nonmovant's case, the nonmovant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); *see also Celotex*, 477 U.S. at 324. Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of

material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson*, 477 U.S. at 257. Summary judgment is proper if the affidavits, depositions, answers, and admissions on file fail to establish the existence of an element essential to the plaintiff's case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. The nonmovant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001).

Courts must employ summary judgment device cautiously. *Jackson v. Procunier*, 789 F.2d 307 (5th Cir. 1986). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980). Unserved and defaulting former officials were entitled to "benefit from the appearing defendants' favorable summary judgment motion." *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001); *see also Bloch v. Samuels*, No. H-04-4861, 2006 WL 2239016, *9 (S.D. Tex. Aug. 6, 2006).

The Court will initially address the motion for summary judgment filed by the TDCJ Defendants. The first issue raised by the TDCJ Defendants concerned Eleventh Amendment immunity. The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that "neither a State nor its officials acting

9

in their official capacities are 'persons' under § 1983." The Supreme Court upheld the dismissal of the Michigan Department of State Police and its Director sued in his official capacity. *Id.* The Fifth Circuit has accordingly "held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). The Eleventh Amendment thus bars claims against the State and for monetary damages against state officials in their official capacities. The Plaintiff may not obtain damages against the TDCJ Defendants for actions taken in their official capacities, although he may recover damages against them for actions taken in their individual capacities.

The next issue raised by the TDCJ Defendants concerns the Plaintiff's request for prospective injunctive relief against them. They argued that they are not authorized policymakers, and they are powerless to modify or contravene TDCJ and UTMB dental policies. The Plaintiff thus cannot satisfy the redressability requirement in order to obtain prospective injunctive relief.

An exception to the Eleventh Amendment immunity exists with respect to claims against state officials for prospective injunctive relief. *Ex parte Young*, 209 U.S. 123 (1908). The Plaintiff must demonstrate three elements to show standing: (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The redressability element requires that a favorable decision for the Plaintiff will likely, not merely speculatively, redress his injuries. *Id.* Moreover, the Fifth Circuit has held that a state official cannot be enjoined to act in any way that is beyond his authority to act in the first place. *Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001).

In the present case, the TDCJ Defendants are Dental Assistant Holliday, former UTMB-CNC Nurse Williams, Polunsky Unit Practice Manager K. Wallace and Food Services Officer

10

Lemaster. None of these people are in a position to modify or contravene TDCJ or UTMB dental policies. None of them are policymakers. They are not in a position to provide dentures to the Plaintiff. The Court would add that Dr. Woody is not in a position to provide dentures to the Plaintiff. The Plaintiff cannot satisfy the redressability requirement in order to obtain prospective injunctive relief for dentures.

The next issue raised by the TDCJ Defendants concerns exhaustion of administrative remedies. They asserted that Defendant Lemaster was never mentioned in the Plaintiff's grievances regarding food services. As such, the claims against him should be dismissed for failure to exhaust administrative remedies.

The law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e. In 1996, Congress enacted the Prison Litigation Reform Act, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court accordingly unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731 (2001). The Supreme Court subsequently reiterated that exhaustion is mandatory and will not be excused when an inmate fails to timely exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Exhaustion also requires that a prisoner satisfy the requirement of "proper exhaustion." *Id.* at 83. The Supreme Court's most recent pronouncement on exhaustion was in *Jones v. Bock*, 549 U.S. 199 (2007). The Supreme Court stated that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. It was added, however, that the "failure to exhaust is an affirmative defense under the PLRA." *Id.* at 216.

In the present case, the grievance records reveal that the Plaintiff asked to be placed on a soft diet as prescribed by his doctor. The response was that he was placed on the list for a soft diet on November 20, 2008. The Food Services Department was contacted to ensure that he was placed on the list. The grievance investigation worksheet reveals that Captain Hasty, the food services manager, stated that the Plaintiff was receiving the prescribed diet. There was no mention of Defendant Lemaster in the Plaintiff's grievance, the response or the grievance investigation worksheet. The TDCJ Defendants appropriately raised the affirmative defense of failure to exhaust regarding Defendant Lemaster, and the claims against him should be dismissed for that reason.

The next issue raised by both the TDCJ Defendants and Dr. Woody concerns the issue of deliberate indifference. Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), the Supreme Court held that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." A prison official may avoid liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. Courts must employ a subjective standard, as opposed to an objective standard, in determining whether a prison official acted with deliberate indifference." *Id.* at 842-43; *Gordon v. Pettiford*, 312 Fed. Appx. 595, 596 (5th Cir. 2009).

The Fifth Circuit has issued several cases in recent years that concern prison systems failing to provide inmates with dentures. One such case was *Hyatt v. Sewell*, 197 Fed. Appx. 370 (5th Cir.

2006), which originated in this Court. The Fifth Circuit made the following conclusion:

> Hyatt began a treatment plan in December 2002, which included a recommendation for a lower partial denture. Over the course of the next three years, Hyatt received a number of fillings as well as other treatment. Although there were some delays in his treatment regarding his dentures, the summary judgment evidence shows that Hyatt was seen regularly, that treatment was provided, and that any delays were the result of at most negligence rather than any deliberate indifference to Hyatt's serious medical needs.

The Fifth Circuit affirmed this Court's decision granting the defendants' motion for summary judgment.

The next case decided by the Fifth Circuit was *Williams v. Mason*, 210 Fed. Appx. 389 (5th Cir. 2006), which also originated in the Eastern District of Texas. The case had been dismissed as frivolous pursuant to 28 U.S.C. § 1915A(b)(1). The plaintiff alleged that he suffered bleeding gums and digestive difficulty, including diarrhea and cramps, due to the failure of the defendant, a dentist, to provide him with dentures. He alleged in his grievances that he suffered from cuts and bleeding taking days to heal and that certain foods were difficult to chew. The Fifth Circuit specified that taking the plaintiff's claims as true, as required for purposes of initial screening, it did not appear "that no relief could be granted based on his alleged facts." *Id.* at 390. The Fifth Circuit concluded that if the plaintiff suffered the injuries and conditions he alleged, then he may have a serious medical need for dentures. *Id.* The case was remanded, and the plaintiff was ultimately provided dentures on remand.

The next case was *Vasquez v. Dretke*, 226 Fed. Appx. 338 (5th Cir. 2007), which also originated out of the Eastern District of Texas. The case was before the Fifth Circuit after the district court had dismissed the case as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1). The Fifth Circuit made the following

13

statement:

> Vasquez has alleged that because he has no dentures, he suffers from difficulty eating, headaches, disfigurement, severe pain, bleeding in his mouth, and blood in his stool. In addition, a doctor recommended dentures for Vasquez. These allegations are sufficient to state a claim for a serious medical need.

*Id.* at 340. The Fifth Circuit rejected the argument that the plaintiff did not have a serious medical need because he did not lose weight. The case was remanded for further consideration.

In *Scribner v. Linthicum*, 232 Fed. Appx. 395 (5th Cir. 2007), the Fifth Circuit reversed this Court's decision granting summary judgment in favor of the TDCJ Director of Medical Services. The Fifth Circuit noted that there was summary judgment evidence that the defendant was aware of the plaintiff's complaints about not receiving dentures and that she had given final approval to the policy that resulted in the denial of dentures. A similar result occurred in *Huffman v. Linthicum*, 265 Fed. Appx. 162 (5th Cir. 2008).

In the present case, the Plaintiff alleged that he was unable to chew food and that he experienced stomach cramps, gas, spastic colon and GERD, which resulted in a loss of weight of 13 pounds since his arrival at the prison system. His allegations were sufficient to proceed on his claims. The competent summary judgment evidence, however, reveals that he was routinely examined by Dr. Mason and other dentists. Dr. Mason and the other dental personnel noted that he was edentulous. On January 25, 2008, Dr. Mason did not observe any metabolic abnormalities and he did not believe that there was a medical necessity for dentures. On May 21, 2008, Dr. Mason did not observe any gingival irritation and no pain was reported. He advised the Plaintiff that he could seek a soft diet pass from the Medical Department. A soft diet was prescribed a week later. On January 5, 2009, Dr. Mason specified that there was no change in the Plaintiff's medical

history. On April 2, 2009, Dr. Brown submitted a recommendation to the prosthodontic committee to provide the Plaintiff with complete dentures, but there is no record that he was approved for dentures. The competent summary judgment evidence reveals that the Plaintiff's weight actually went up from 112 pounds upon his arrival to 131 pounds on August 7, 2009. The Plaintiff did not submit any evidence showing that he has been harmed by the denial of his request for dentures.

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). A disagreement with the treatment provided by a doctor does not rise to the level of a constitutional violation. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). The Court has not found any Fifth Circuit case, nor any published decision issued by another circuit, giving an inmate an unequivocal right to dentures.

In the present case, the Plaintiff has not submitted competent summary judgment evidence showing that he had a serious medical need. The people who he primarily dealt with regarding dentures were Dr. Mason and Dr. Brown, but he has not shown that they were deliberately indifferent. Moreover, he did not even sue them. The competent summary judgment evidence shows that Dr. Mason followed the UTMB-CMC policy regarding dentures, but the Plaintiff did

not sue any dental policymakers over the policy. Similarly, he sued Dr. Woody for following the policy, but he did not otherwise show that she did anything wrong. He did not show that she had a culpable state of mind or was deliberately indifferent. Dr. Woody is entitled to summary judgment.

The Plaintiff likewise failed to present competent summary judgment evidence showing that any of the TDCJ Defendants had a culpable state of mind or were deliberately indifferent. He asserted that R.D.A. Holliday denied him adequate dental care and mislead him into believing that he would be provided dentures. The competent summary judgment evidence does not support his claim. He likewise claimed that Defendants Williams and Wallace denied him dentures. Once again, however, the person who actually found that there was no indication of a medical necessity for dentures was Dr. Mason, who was not sued by the Plaintiff, and there likewise was no indication that Dr. Mason was deliberately indifferent. The Plaintiff has shown nothing more than a disagreement with the assessment. The TDCJ Defendants further correctly showed that there is nothing in the record to show that Lemaster had any contact with the Plaintiff and that he was deliberately indifferent. In conclusion, the Plaintiff failed to satisfy his burden on summary judgment to show that the Defendants were deliberately indifferent.

The TDCJ Defendants also argued that they are entitled to summary judgment based on qualified immunity. The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The doctrine of qualified immunity shields government officials "from civil damages liability as long as their actions could

reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

A two-step process has traditionally been employed in evaluating the defense of qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001). A court must first consider whether "the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201. Second, if the plaintiff has satisfied the first step, courts are required to decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* The Fifth Circuit has accordingly held that "a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2004). More recently, the Supreme Court held that a case may be dismissed based on either step in the qualified immunity analysis: "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

The TDCJ Defendants correctly argued that the Plaintiff failed to satisfy his burden with respect to either prong in the qualified immunity analysis. He provided nothing other than his own conclusory allegations of a violation of his constitutional rights, which were not enough to escape summary judgment based on qualified immunity. He has not shown that their actions were objectively unreasonable. The TDCJ Defendants are thus entitled to summary judgment based on qualified immunity. It is accordingly

**ORDERED** that Dr. Woody's motion for summary judgment (docket entry #53) and the TDCJ Defendants' motion for summary judgment (docket entry #58) are **GRANTED**. It is further

**ORDERED** that the complaint is **DISMISSED** with prejudice. It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **18** day of **March, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE